**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

IRON WORKERS MID-SOUTH        *        CIVIL ACTION
PENSION FUND, ET AL

VERSUS                        *        NO.  11-cv-01632

CHAMPION STEEL COMPANY, LLC, *        SECTION "C" (2)
ET AL

                    *        *        *

**ORDER AND REASONS**[1]

Before the Court is a Motion for Summary Judgment filed by the Plaintiffs, Iron Workers

Local 58, Iron Workers Local 623, Iron Workers District Council of Texas and the Mid South States

(collectively "Unions), and Iron Workers' Mid-South Pension Fund,  Iron Workers Welfare Fund,

Mid-South Iron Workers Direct  Contribution Plan, Iron Workers Local 58 Apprenticeship Fund,

Iron Workers Local 623 Apprenticeship Fund, Iron Workers Local 58 Vacation Fund, and Iron

Workers Management Progressive Action Cooperative Trust (collectively "Funds").[2] (Rec. Doc. 56).

Defendants Champion Steel Company, LLC ('Champion') and Jack Bass ('Bass') oppose the

---

[1]Jessica Earl, a third-year student at Tulane University Law School, assisted in the
preparation of this Order and Reasons.

[2]There is no dispute that Iron Workers Local 58, Iron Workers Local 623 and Workers
District Council of Texas and the Mid South States are labor organizations within the meaning of
the National Labor Relations Act, 29 U.S.C. §  152(5) and employee organizations within the
meaning of Employment Retirement Income Security Act of 1974 ('ERISA'), 29 U.S.C. §
1002(4).  Iron Workers' Mid-South Pension Fund,  Iron Workers Welfare Fund,  Mid-South
Iron Workers Direct  Contribution Plan, Iron Workers Local 58 Apprenticeship Fund, Iron
Workers Local 623 Apprenticeship Fund, and Iron Workers Local 58 Vacation Fund are
"employee welfare benefit plans" within the meaning of ERISA, 29 U.S.C. § 1002(1), and Iron
Workers Management Progressive Action Cooperative Trust is a cooperative union management
trust.  (Rec. Doc. 1).

1

motion. (Rec. Doc. 72). Having considered the memoranda of counsel, the record, and the applicable law, the Court finds that the Motion for Summary Judgment should be GRANTED in part and DENIED in part for the following reasons.

## I. BACKGROUND

This case arises out of Defendants' alleged failure to timely make contributions to the various plaintiffs involving employee benefits plans governed by the Employment Retirement Income Security Act of 1974 ('ERISA'), 29 U.S.C. § 1001, *et seq.* Plaintiffs are seeking unpaid amounts allegedly owed pursuant to June 2003 and June 2006 collective bargaining agreements ('CBAs') and Payout Agreements in June 2005 and September 2006. (Rec. Doc. 1). Specifically, the complaint sets forth five claims. In Count I, the Funds seek collection from Champion and Bass for all unpaid contributions, late fees, interest and other amounts owed under ERISA and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (Rec. Doc. 1 at ¶¶ 40-46). In Count II, the Unions seek the recovery from Champion for unpaid dues and contributions under the LMRA. *Id.* at ¶¶ 47-50. In Count III, Plaintiffs seek recovery from Bass for breach of fiduciary duty and personal guarantor of Champion. *Id.* at ¶¶ 501-58. Plaintiffs seek recovery under Louisiana state law from both defendants for breach of the Payout Agreements in Count IV. In Count V, the Unions seek recovery from Champion for unpaid wages owed as assessments, dues and Vacation Fund payments under the Louisiana Wage Claim Act, La. Rev. Stat. §§631-640.

Many of the material facts are undisputed. Plaintiffs allege that beginning in October 2003, Defendants failed to make timely payment of its fringe benefits, late fees, and interest owed on contributions. *Id.* at 5. Plaintiffs allege this failure to pay went on from October 2003 until March 2005 at which point plaintiffs allege a large delinquency had accumulated. *Id.* As a result, Plaintiffs

and Defendants entered into a Payout Agreement in June 2005, providing Defendants would make monthly payments to cover unpaid contributions and interest for a period of seven years as well as remain current on future contributions. *Id.* at 6. After signing the initial Payout Agreement, Champion made some payments under 2005 agreement, but was unable to stay current after June 13, 2005. *Id.* As a result, Defendants entered into a new Payout Agreement on September 11, 2006, in which Champion recognized its delinquencies under the original Payout Agreement and acknowledged unpaid contributions of $474,438.25, including interest, covering work from December 2003 until June 2006. *Id.* at 7. Defendants agreed to make monthly payments to cover unpaid contributions and interest for a period of seven years and remain current on future contributions. *Id.* Bass personally signed off on the 2006 Payout Agreement, allegedly guaranteeing the personal payment of any contributions that may become past due. *Id.* Champion again made contributions under the 2006 Payout Agreement, but it defaulted and failed to remain current. *Id.*

After the December 8, 2010, Board Meeting, the Funds selected Champion for a payroll audit to be performed by Needles & Associates, LLC. *Id.* The audit revealed Champion's alleged failure to continue payments to the Funds from January 2008 through February 2011, in which a further debt of $364,245.94 was incurred by Defendants. *Id.* Defendants claim this amount is excessive, and they instead allege Champion owes $256,965.01 in contributions and $35,137.34 in interest for the audit period. (Rec. Doc. 72, 3). Defendants allege that Plaintiffs' audit numbers include fringe benefits owed to various workers that are not technically iron workers under the meaning of the CBA, and if not for the inclusion of these workers, Plaintiffs' numbers are the same as Defendants'. *Id.*; (*see also* Rec. Doc. 56-1, fn 132). On June 13, 2011, Plaintiffs sent Defendants a demand letter

for payment of the delinquent contributions plus interest. (Rec. Doc. 56-1, 8). When payments were

not made, the Plaintiffs filed suit in this Court. *Id.*

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper only when the record indicates that there is not a "genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of fact exists

if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1996). When considering a motion for

summary judgment, this Court "will review the facts drawing all inferences most favorable to the

party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co* ., 784 F.2d 577, 578 (5th Cir.

1986).

The party moving for summary judgment bears the initial burden of "informing the district

court of the basis for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact ." *Celotex*, 477 U.S. at 323. "If the

moving party meets the initial burden of showing that there is no genuine issue of material fact, the

burden shifts to the non-moving party to produce evidence or designate specific facts showing the

existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459,

1462 (5th Cir.1995) (citing *Celotex*, 477 U.S. at 322–24). In order to satisfy its burden, the non-

moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions"

and "conclusory allegations." *See e.g., Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l.*

*Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50.

**B. Plaintiffs Claims Under ERISA: Count I**

In Count I, Plaintiffs allege that the denial of benefits to Champion employees is in violation of ERISA, and therefore they are authorized under Section 502(a)(3) of ERISA to file civil action as fiduciaries to enforce the plan. (Rec. Doc. 56-1, 10). Plaintiffs further allege under Section 515 of ERISA, they are authorized as trustees to "recover delinquent contributions efficaciously". *Id.* First, the Court must determine if two requirements are met: 1) the plaintiffs' claim must fall within the scope of ERISA; and 2) the plaintiffs must have standing to sue under ERISA. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 2011-12 (2000). Here, Plaintiffs' claims clearly fall within the scope of ERISA and they have standing to sue under ERISA. There is no dispute that the Funds are covered by ERISA nor is there dispute that Plaintiffs are beneficiaries with standing to sue. *See* 29 U.S.C. § 1002(8). If an employer fails to make required contributions for which it is obligated under the CBA, trustees may recover delinquent contributions as provided by Section 502(g)(2):

> In any action under this subchapter by a fiduciary for or on behalf of
> a plan to enforce section 1145 of this title in which a judgment in
> favor of the plan is awarded, the court shall award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not
> in excess of 20 percent (or such higher percentage as may be
> permitted under Federal or State law) of the amount determined by
> the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by
the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

29. U.S.C. § 1132(g)(2).

In addition, there is no dispute that Champion was signatory to both CBAs and Payout Agreements, or that Bass signed on behalf of Champion and, with regard to the 2006 Payout Agreement, as guarantor. (Rec. Doc. 56-1, 11-13). Plaintiffs argue that under the CBA and the Payout Agreement that Champion's contributions in the amount of $183,875.44 are due and owing. *Id.* at 13. Further, Plaintiffs allege that under the terms of the CBA and the Payout Agreements, Defendants owe interest at a rate of 12% for the amount of $137,645.50 and liquidated damages in the amount of $36,775.08. In regards to the CBA and the Payout Agreement, Defendants do not dispute the amounts owed nor that the fact Plaintiffs may bring civil claims for delinquent contributions under ERISA. (Rec. Doc. 72-1). Accordingly, the Court finds in favor of Plaintiffs on the claim set forth in Count I pertaining to amounts owed under the 2006 Payout Agreement as to Champion.[3]

Plaintiffs also argue that Defendants failed to continue contributions under the 2006 Payout Agreement for the period of January 2008 through February 2011 as indicated in the audit. (Rec. Doc. 56-1, 14). Plaintiffs allege, for the same reasons stated above, that ERISA mandates the payment of delinquent contributions for this time period in the amount of $364,245.94. *Id.* Defendants do not deny that the CBA and 2006 Payout Agreement cover the time period stated in Plaintiffs' motion nor that ERISA mandates payment. (Rec. Doc. 72-1, 4-5). Defendants do,

---

[3]The claim against Bass individually is discussed separately, as is the exact amount owed.

however, contest the amount owed during this time period, as calculated by Plaintiffs' payroll audit. *Id.* Defendants argue certain employees listed in the audit as iron workers are not actually eligible for Fund benefits under the CBA and Payout Agreement, and therefore Defendants owe only $256,965.01 in contributions and $35,137.34 in interest. (Rec. Doc. 72, 3). Plaintiffs allege these workers have in fact performed iron work and therefore are eligible for benefits, and Defendants have underreported as to which individuals are owed. (Rec. Doc. 56-1, 16-17). Plaintiffs claim that Bass testified in deposition that he cannot remember who was considered an iron worker under the plan, and absent such evidence classifying the workers, the Motion for Summary Judgment as to amounts owed under the audit period should be granted to include the workers in Plaintiffs' claim. (Rec. Doc. 56-1, 17).

The issue as to which employees are considered iron workers for purposes of payment under ERISA appears to be a genuine issue of material fact the determination of which shall be reserved for trial. Plaintiffs' evidence includes the deposition of Bass and the specifics of the CBA and Payout Agreements, yet Plaintiffs have not produced any specific evidence as to exactly which workers during the audit period of January 2008- February 2011 were qualified as iron workers under the specific terms outlined in the CBA. As the party moving for summary judgment in this issue, Plaintiffs bear the burden of proving the absence of a genuine issue of material fact. Accordingly, the Court finds summary judgment in favor of Plaintiffs and against Champion as to the amount of delinquent contributions owed under the 2008-2011 payroll audit that are not disputed by Defendants, and against Plaintiffs for the disputed amounts.[4]

---

[4]Champion does not address the claim against it pertaining to the LMRA contained in Count II, which is granted as to Champion as unopposed and as properly supported.

**C. Claims under Louisiana law & Louisiana Wage Claim Act: Counts IV & V**

Plaintiffs also argue for summary judgment on the Funds' Count IV claim for breach of the

Payout Agreements against both defendants under Louisiana law and the Unions' Count V claim

against Champion under the Louisiana Wage Claim Act, La. Rev. Stat. §§9:631-640, for unpaid

wages owed as assessments, dues, and Vacation Fund payments. (Rec. Doc. 56-1, 20-24).[5]

Defendants argue that the state law contract claims and the Louisiana Wage Claim Act claim are

preempted by ERISA. (Rec. Doc. 72, 1-2).

ERISA's express preemption clause provides that the provisions of ERISA "shall supersede

any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

29 U.S.C. § 1144(a). The Supreme Court has explained "any state-law cause of action that

duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear

congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Davila*, 542

U.S. at 209. In particular, "if an individual ... could have brought his claim under ERISA §

502(a)(1)(B), ... then the individual's cause of action is completely preempted...." *Id.* at 210. Here,

in Count IV, Plaintiffs seek recovery of amounts representing contributions owed under the Payout

Agreements and, in turn, the CBAs. In Count V, the Unions seek amounts owed under the CBA for

"vacation, health and welfare pension, apprenticeship and training, supplemental unemployment

_____

[5]Although it is somewhat unclear to the undersigned if the Champion opposes summary judgment on the state law breach of contract claim based on the Payout Agreements contained in Count IV, the Court construes the opposition as including such an argument. In this respect, the Court disagrees with Plaintiffs, who note in reply that opposition is lacking by both defendants. (Rec. Doc. 72, 1-3; Rec. Doc. 79, 9). It is unclear to the Court what effect the state law contract claim has with regard to Champion's liability, which is recognized, to the extent of the undisputed amount, with regard to the ERISA claim against Champion contained in Count I and Count II, for which summary judgment is being granted.

benefits, or any other fringe benefits" as provided by La. Rev. Stat. § 23:640. The relief sought in both is consistent with Plaintiffs' invocation of Section 502(a)(1)(B) of ERISA . (Rec. Doc. 56-1, 23).

In addition to being susceptible to a claim under ERISA § 502(a)(1)(B), preemption is appropriate if there is no legal duty independent of ERISA or the plan terms that is implicated by the defendant's actions. *Davila*, 542 U.S. at 209–10. Conversely, "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan," are not preempted. *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). The Court finds that the claims contained in Count IV and Count V do not qualify as "run-of -the-mill" state law claims that would fall outside the ERISA preemption.

Further, where a defendant's duty is derived entirely from the particular rights and obligations established by its benefit plans, such obligation is not an "independent legal duty" sufficient to evade ERISA preemption. *See Davila,* 542 U.S. at 213–14 ("Thus, interpretation of the terms of respondents' benefit plans forms an essential part of their [state law] claim, and [state law] liability would exist here only because of petitioners' administration of ERISA-regulated benefit plans. Petitioners' potential liability under the [state law] in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans.") Therefore, the Court finds that Plaintiffs' claims do not implicate a legal duty independent of the Plan. *See McGowin v. ManPowerInt'l., Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (When plaintiff seeks a determination of eligibility for benefits under an ERISA-governed plan, such claim is completely preempted by ERISA and is removable to federal court even if characterized as arising under state law.)

Accordingly, to the extent that they arise under state law, the Court finds that the Funds' claim for breach of contract claim contained in Count IV and the Unions' Louisiana Wage Claim Act contained in Count V are preempted under ERISA.

**D. Claims Against Jack Bass in his Personal Capacity as Fiduciary and Guarantor: Count III**

In Count III of the complaint, Plaintiffs allege that Bass, as the officer of Champion Steel, is a fiduciary of the Plaintiffs' Funds and therefore individually liable for breach of fiduciary duty. (Rec. Doc. 1, 12) (Rec. Doc. 79). In the Plaintiffs' Motion for Summary Judgment, there is no argument that Bass is a fiduciary, but Plaintiffs do argue that he is personally liable for payment under Louisiana breach of contract law because of his failure to comply with the 2006 Payout Agreement. (Rec. Doc. 56-1, 20). As stated above, all Louisiana state law claims are preempted under ERISA, including the claim set forth in Count IV regarding breach of contract.

In its reply, Plaintiffs argue for the first time that Bass is liable for unpaid contributions under state law as a fiduciary. (Rec. Doc. 79). With regard to fiduciary status, Plaintiffs claim that Bass is a fiduciary who has breached his duty as imposed by ERISA. Under ERISA, an employer is a fiduciary with respect to a welfare benefit fund the extent that "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). In determining what constitutes plan assets, the Department of Labor regulations and federal case law establish that unpaid fringe benefit contributions are vested plan assets when due. *Iron Workers' Local No. 25 Pension and Ben. Funds v. Steel Enterprises Inc.*, 2009 WL 3645633, at *3-4 (E.D. Mich. 2009). The definition of "plan assets" as to participant contributions states as a general rule that "[f]or purposes of [ERISA], the assets of the plan include amounts (other than union dues) that

10

a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contributions to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3–102(a). In the present case, the defendants provide no opposition that the amounts owed to the Plaintiffs are considered plan assets, and the Court will so assume.

ERISA imposes personal liability on fiduciaries as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of the *assets of the plan by the fiduciary*, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

29 U.S.C. § 1109(a) (emphasis added). The Court finds that Bass's failure to make contributions to the funds cannot be construed as taking part in "management" or "disposition" of the Plan's assets, a responsibility that appears to have been given to the Trustees. (*See e.g.*: Rec. Doc. 56-15, 56-16, 56-17, 56-18).[6] Bass's alleged refusal, or rather inability, to pay the Funds as required under the CBA does not rise to the level of exercising complete discretionary control or authority so that fiduciary status attaches. "Mere possession or custody over a plan's assets does not automatically

---

[6] The Plaintiffs themselves recognize the Trustees as the fiduciaries: "The funds are administered by six trustees, three 'management trustees' and three 'union trustees.' The trustees are *charged with the fiduciary responsibility* to receive contributions to the fund, and to 'do all acts... necessary or proper for the protection of the [fund].'" (Rec. Doc. 56-1, 12). The Court is unable to find reference in the motion that Bass is argued to be a fiduciary along with the Trustees, as is alleged in the Count III of the complaint.

lead to fiduciary status." *Sheet Metal Local 98 Pension Fund v. AirTab, Inc.*, 2012 WL 1940229 (6th Cir. 2012).[7]

Further, Plaintiffs do not direct the Court to any document, including the CBA and the Payout Agreements, in which Bass is defined as a fiduciary. (S*ee* Rec. Doc. 56-15, 56-16, 56-17, 56-18). In this respect, courts have held "a person should not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of his status as fiduciary." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003); see also *Sheet Metal Local 98 , supra*. Here, even if Bass knew he was personally guaranteeing payment of delinquent contributions, there is no evidence that indicates Bass was ever made aware of his potential status as a fiduciary under ERISA.

The Plaintiffs point to no other actions of Bass besides his inability to pay funds as constituting a breach of fiduciary duty. The Plaintiffs' breach of contract claim is therefore characterized as a mere restatement of its other claims. Courts have long disapproved of such restatements under ERISA. For example, the Fifth Circuit has held that state laws subject to ERISA preemption include state law causes of action that in any way relate to an employee benefit plan,

---

[7]In addition, ERISA discusses delinquent contributions to an employee benefit plan separate and apart from its fiduciary obligation sections. *Id.* Section 515 of ERISA, 29 U.S.C. § 1145, states:

> "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall ... make such contributions in accordance with the terms and conditions of such plan or such agreement."

ERISA therefore "creates a federal right of action independent of the contract on which the duty to contribute is based and may be enforced by an action brought in the district court." *Bituminous Coal Operators' Ass'n v. Connors*, 867 F.2d 625, 633 (C.A.D.C.1989). As such, Section 515 suggests that reliance on ERISA's fiduciary obligation sections was not intended in delinquent contribution cases such as this one. Instead, as noted, ERISA language provides that an employer assumes fiduciary status to the extent he "exercises any authority or control respecting management... of its assets." 29 U.S.C. § 1002(21)(A).

even if the claim arises under a general state law that has no connection to employee benefit plans, such as breach of contract here. *See Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1218-19 (5th Cir. 1992); *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir. 1988) (explaining that state-law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud are preempted by ERISA when an entity seeks to recover benefits owed under a plan); *See also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 428 (6th Cir. 2006).

Further, this is not a situation where the employer has decided to funnel monies from an account toward paying off creditors rather than to beneficiaries or into other companies the employer may be in control of. *See LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (holding that an employer's commingling of plan assets to pay creditors made him a fiduciary for wrongly administering assets); *Yaseta v. Baima*, 837 F.2d 830 (9th Cir. 1988) (holding an employee in charge of plan administration withdrew plan contributions to pay 'operating expenses' was liable as a fiduciary). Unlike the cases in which an employer was wrongly distributing plan assets, this is an instance in which an employer affirmatively attempted to make plan contributions when possible, but financially could not handle the burden. (*See generally,* Deposition of Bass, Rec. Doc. 56-24). There is nothing in the record indicating Bass was wrongly commingling plan assets to cover his company's expenses or operating costs. *Id.* Bass clearly mentions throughout deposition that he was aware of his inability to pay and made contributions when ever possible. *Id.* Further, this is a situation in which Plaintiffs attempt to transform an employer's failure to pay contributions into an exercise of control over a plan's assets. The Court finds that Bass is not liable as a fiduciary under these circumstances as a matter of law and agrees that an officer does not become liable as a fiduciary under ERISA merely because he breaches a contractual obligation to the Fund.

Accordingly, the Court finds that Bass is not personally liable as a fiduciary under ERISA nor liable for state law breach of contract claims as set forth in Counts III and IV.

Finally, Plaintiffs argue in reply that Bass is personally liable as a corporate officer of Champion pursuant to his guarantee on the 2006 Payout Agreement, which Plaintiffs also characterize as a surety. (Rec. Doc. 79, 7). Again, the Court has found that the state law Buyout Agreement containing the personal guarantee is preempted by ERISA. ERISA is meant to provide a "cause of action and remedies for an *employer's* failure to fulfill its obligations." 29 U.S.C. § 1145 (emphasis added). Plaintiffs cite to *Iron Workers Mid-South Pension v. Terotechnology* in which the Fifth Circuit notes that Congress intended for ERISA to be very expansive, designed to include specific parties to pension plans as exclusively federal concerns. *Iron Workers Mid-South Pension Fund v. Terotechnology Corp.,* 891 F.2d 548, 555 (5th Cir. 1990). In *Iron Workers*, the plaintiffs attempted to bring claims for unpaid benefit plans against both the employer and the property owner of a property on which employees worked. *Id.* at 549-50. The Fifth Circuit held that both the employer and the third-party property owner were covered under ERISA preemptions and could not be held liable under state law contract claims due to ERISA's expansive nature. *Id.* at 555-56.

Here, Plaintiffs allege Bass is unlike the employer and the property owner in *Iron Workers* because by willingly signing the Payout Agreement Bass is no longer an employer covered by ERISA, but rather a surety of Champion, liable for the unpaid contributions. (Rec. Doc. 79, 7). The Court declines to accept this argument. Nowhere in Plaintiffs reply do they cite a case in which an employer was converted to a surety for payment purposes by merely signing a payment agreement governed by state law. The case cited by Plaintiffs, *Iron Workers*, itself indicates Congress intended

14

for an expansive group of parties such as employers, third parties, and other potential liable individuals to be covered by the ERISA preemptions. *Iron Workers*, 891 F.2d at 555.

Neither does *Iron Workers* hold that an employer, by signing a payment agreement, has consented to becoming a surety personally liable for any claims that arise outside the limits of ERISA.[8] A surety is not an employer within the meaning of ERISA. *See Giardiello v. Balboa Ins. Co.*, 837 F.2d 1566, 1569 (11th Cir. 1988). A surety does not become an employer within the meaning of ERISA "simply by guaranteeing an employer's ERISA obligations." *Greenbalt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 575-76 (2d Cir. 1995). A surety is a separate entity which guarantees payment of certain sums should an employer default on obligations. *Id.* As such, a surety does not act "in the interests of the employer" as used in the statute defining the term "employer" under ERISA. 29 U.S.C.A. § 1002(5). A surety acts directly in the interest of the employees damaged by the employer's failure to pay, and, as a result, may act indirectly in the interests of the employer. *See* Though a surety is not an employer as defined by ERISA and can therefore be held

---

[8] Plaintiffs also cite to *Cement and Concrete Workers Welfare Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994), in which the Second Circuit recognized that company officers who assume responsibility for company ERISA obligations as part of the collective bargaining agreement may qualify as an "employer who is obligated to make contributions" for purposes of ERISA. That court recognized individual liability had been imposed in cases involving fraud or acts warranting piercing of the corporate veil, which are not supported by undisputed facts here. *Id.* at 36. To the contrary, Bass was forthright throughout discovery, explaining he could not pay because Champion simply did not have the funds, not because he had been engaging in fraud. (*See generally* Deposition of Bass). Although the *Lollo* case recognized that an employer's obligation had to arise from a source other than ERISA since the obligation is a precondition to the ERISA duty, ERISA is not intended to expand liability beyond parties who in a plan or CBA obligate themselves to make the contributions. *Id.* at 37. Here, the Court has found the Payout Agreements as preempted by ERISA.

liable for claims outside ERISA, the Court declines to accept Plaintiffs' argument that Bass somehow became a third party surety by way of his guarantee on the Payout Agreement.[9]

### III. CONCLUSION

Accordingly,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED with respect to the undisputed amounts owed under ERISA to the Funds by Champion Steel Company, L.L.C. in Count 1 and with respect to the Unions' claims against Champion Steel Company, L.L.C. in Count II. The Motion for Summary Judgment is DENIED with respect to the claim against Jack Bass as personal guarantor in Count III and otherwise, and with respect to the state law claims set forth in Counts IV and Count V. ( Rec. Doc. 56).

New Orleans, Louisiana, this 5th day of December, 2012.

HELEN G. BERRIGAN
**UNITED STATES DISTRICT JUDGE**

---

[9] Further, there are no indications Bass intended to be treated as a surety. *See Stone v. ADB Ironworks, Inc.* 1998 WL 259531, *2 (N.D. Ill. 1998) (holding a company's intentions are manifested solely in a surety agreement, and, "even according to the complaint, [the employer's] *intention* was to act as a surety.") (emphasis added). Here, there is no evidence presented that, by signing the 2006 Payout Agreement, Bass manifested some intent to be both the employer and the surety.